The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable of the United States Court of Appeals for the 4th Circuit are admonished to draw nigh and give their attention. For the Court is now sitting. God save the United States and this Honorable Court. All right, good morning, please be seated. Welcome to the 4th Circuit. We have three cases on the calendar this morning and I'm pleased to have you all here. We begin with United States v. Smith, 21-6829. Mr. Wagner, whenever you're ready. Good morning. You may please the Court. My name is Rob Wagner and I represent Mr. Smith and his appeal. Mr. Smith was a low-level drug dealer in 2006 with one state felony drug conviction on his record for which he received a suspended sentence at his state sentencing proceeding. He was sentenced to a mandatory minimum term of imprisonment of 240 months. Under the Fair Sentencing Act, that mandatory minimum sentence no longer applied and his The issues presented to this Court are the same issues that this Court addressed in United States v. Swain. The case identified by this Court as framing the issues on appeal in the very description of this case on the Court's oral argument calendar. The first issue is whether the District Court's denial of Section 404 First Step Act relief involved the Court improperly imposing the equivalent of an upward variance sentence without a sufficient explanation from the Court. The second is the District Court's failure to address or even acknowledge the broad remedial purposes of the Fair Sentencing Act and the First Step Act. Now, the resolution of the first issue raised- Mr. Wagner, can I ask you about that? I'm sorry to take you out of order, but with respect to that second point, what do you say that the District Court had to do? I mean, did it have to recite script saying, hey, by the way, I recognize the remedial features and intentions of the First Step Act? I mean, the District Court in this case, Judge Hudson's been around for a while. I mean, he's done more than one, I imagine, First Step Act cases. He recognized that he had to recalculate the guidelines range and even though he didn't say so expressly, I can't imagine that he didn't understand that the sentence he ultimately fixed on was an above-guideline sentence. So I'm just, you know, kind of left wondering what he was supposed to do. Well, Judge, this Court made clear in swaying the importance of the remedial, the broad remedial purposes of both the Fair Sentencing Act and the First Step Act. And at least the Court should have acknowledged that. how Congress has determined that this is a very important matter, that we are looking at a broad range of crack cocaine cases that were improperly and unjustly, sentences improperly and unjustly opposed, and we're doing something about it. And I think the Court at least needs to recognize that Congress has done something about that impropriety. And if Judge Hudson had done what you just said and said, nonetheless, I'm sticking with the original sentence, and I think the reason he gave principally, I suppose, is that in addition to the nature of the offense, he focused on your client's less than stellar conduct initially while he was incarcerated, albeit he improved over time. But my question is, if he had done what you just said and then decided, nonetheless, I'm going to keep the sentence that I imposed initially, do you have something to fight about?  Well, absolutely, then that would be the first issue, Judge. And that would be the fact that there was an upward variance that existed because of Judge Hudson's imposition of the 240 months. Do you think that the Judge could not have imposed any kind of a variant sentence in this case? Oh, no, Judge. No. How much is too much? Well, if there's an upward variance, I mean, the Supreme Court in Rita, this Court in for that upward variance. And the Judge never even acknowledged that he was imposing an upward variance. And so the level of the upward variance, when you look at the changes under the Fair Sentencing Act, the subsequent changes by the Sentencing Commission to the crack cocaine guidelines, if you look at those changes, the difference is upwards of 100 months from the 240-month sentence that was imposed by Judge Hudson and the high end of the revised guidelines. With that kind of upward departure that he was imposing, there had to be more. He was relying principally on... Just to clarify, you said something about upwards of 100, but it's 78, right? Well, Judge, I would suggest that the Court should consider the error in the calculation of the guidelines. Did you suggest that in the district court? I did not, Judge. I did not, Judge. But here we are some three years later, two years after the Judge's decision. And I don't know if the Court would have me ignore that error in the record. I felt it was important to point it out. But yes, in 78 months from the high end of the calculated guideline range that the district court relied on, still a very substantial... variance, but the effective does a lot of work there, right? It's not an actual variance because the Court's allowed to make adjustments as if the Fair Sentencing Act was in place, right? Now, there was an actual variance sentence here when he was originally sentenced, right? A variance of about five months from the guidelines. But the guidelines were adjusted because of the mandatory minimum sentence, 240 months. Right. So, I don't know if it was, maybe an effective variance would be a good way to put it there as well. Have we found variances of approximately 78 months, let's call it a variance, in original sentencing? Have we found variances of that length to be justified by the seriousness of the offense, behavior while incarcerated, those sorts of things? Certainly, Judge. There are cases, but again, they must be very scrupulously justified in the district court record. The district court judge must make references to why an upward variance is justified. In this case, you had a rehabilitation question that came up, and clearly, in the first couple of years of Mr. Smith's incarceration in the federal prisons, he had some problems. He had some violations. But now, it's been 10 years since any infraction that he's had in the federal prisons. And with his informal brief that he provided to the court, he has now obtained his GED. This is a person who had learning disabilities. And he worked, and he got a letter from his GED teacher at the institution to talk about the good work that he had done and the improvements that he had made. And finally, very recently, he's actually obtained that GED. And so, anything that Judge Hudson said about problems with rehabilitation and the institutional record I believe are defied by the recent progress that Mr. Smith made. And Judge Hudson acknowledged that, but he also talked, in his opinion, about the circumstances surrounding the offense and the circumstances brought to the court's attention about the offense at sentencing. And that's something that he was not supposed to do. It's something that the law would preclude because he found that the government was not able to prove by a preponderance of the evidence that Mr. Smith was responsible for that murder. Do you think he actually punished or penalized your client for that? I mean, he just acknowledged that, but it seemed like that was the focus of his sentencing decision. Well, Judge, with the language he used in his decision, I can't glean from that anything other than he was relying on the facts and circumstances presented at the sentencing hearing surrounding the offense. And, I mean, frankly, when you compare this case to other cases that come before this court on Section 404 review, 270 months, excuse me, 270 grams of crack cocaine, that's not a substantial amount of crack cocaine. In the Swain case, that was 6.2 kilograms of crack cocaine. You had undercover buys of nine ounces of crack cocaine in Swain. In Mr. Smith's case, it was a 1.5-gram transaction of crack cocaine, a total amount of 270 grams. So when we're talking about the facts and circumstances surrounding the issues raised at sentencing, I think Judge Hudson was signaling, the district court was signaling very clearly what he was referring to. And that's a dangerous road to go down because he found that the government hadn't proven that violent conduct by a preponderance of the evidence. What about his reliance on the fact that the amount in question, and you say it's not a significant amount, but it is what it is, was just shy of the amount that would have been needed for the enhancement? Is that a relevant fact? Oh, it certainly is a relevant fact. But when you talk about unwarranted disparities, and you talk about, and you look at how the other defendants in that conspiracy were sentenced, based on that much and even more crack cocaine than Mr. Swain, excuse me, than Mr. Smith was attributed, you see that a 240-month sentence is not appropriate. Under the 35, I'm sorry, Judge. No, that's okay. I want to get back to Judge Rushing's question about have we ever found a 70-plus variance, and I know there's some question about whether or not it's an actual variance, to be substantively unreasonable just as a matter of course in a direct appeal. So let's say we agree with you and the case goes back, and Judge Hudson says, okay, well, I've got my marching orders from the Fourth Circuit. I think a 40-month variance is okay, or a 50-month variance is okay. And then it comes back up to us here. I mean, what are we supposed to do with that? Well, Judge, I think this Court would send a very strong message to the District Court if it found that his sentence was substantively unreasonable, and I think it would send a strong message to the Court that he should be looking very closely at the guideline sentence that would now be in front of that Court at the time of sentencing. If you look at the 35... But you're not suggesting that the guideline is inexorably what Judge Hudson would have to land on, right? Or are you? I presented in my brief the statistics, in my opening brief, the statistics of the imposition of upward variance sentences in crack cocaine cases around the country, and the incidence of that application of upward variances is less than 1 percent with someone with the characteristics of Mr. Smith. And so when you consider that it's so unusual, it's so unique to have such a small percentage of people getting variance sentences, I think the Judge would be very reluctant to impose an upward variance if the case were sent back to him. And again, the guidelines would be recalculated. Under my calculations of the guidelines, they would be lower than the guidelines that were And if we had another opportunity before the Court, then those guidelines would be even lower. And right now, if he were to be released, it would be the equivalent of about a 165-170-month sentence. So all that would be required is a 60- or 70-month reduction to allow for Mr. Smith's release. And that's what we're asking for here, Judge. But I spoke a little bit about the remedial nature, or the broad remedial purposes of the Fair Sentencing Act and the First Step Act. That broad remedial purpose is specifically important to this Court, to the Fourth Circuit, to the Eastern District of Virginia, and to the Richmond Court. If you look at the statistics for Fair Sentencing Act and First Step Act cases, the Fourth Circuit has the most crack cocaine cases than any other circuit in the country. And by twice as much for the next circuit. If you look at the Eastern District of Virginia, within the Fourth Circuit, the Eastern District of Virginia has brought more crack cocaine cases under the Fair Sentencing Act, under the First Step Act, to this Court. And within the Eastern District of Virginia, Richmond had more crack cocaine cases than any other of the divisions, by far. And this was a practice from the middle of the 1990s, through the imposition of the Fair Sentencing Act in 2010, Richmond consistently had the highest numbers. So those broad remedial purposes had more impact on the communities of Richmond, Virginia than essentially any other place in the country. And so I ask that the Court take that into consideration. And this case is presented to the Court in a very unique position. This Court framed the issue before the Court as one involving swing. So, related to that, before you run out of time, I get your point about what Congress intended here, but Congress also explicitly said that the decision whether or not to keep the original sentence remained within the discretion of the District Court, right? That was the way the statute is framed. But Congress could have said, we impose a presumption, for example, that a guideline sentence is going to be appropriate, and the District Court, before he or she deviates from that, has to make a strong or compelling case based on the record for deviating from that. But the Act doesn't say that. Ultimately, it leaves it within the discretion of a District Court. In this case, the District Court judge has been around the block a few times and certainly understands, you know, what the Act was intended to do and what his obligations were. So, you know, why don't you speak to that? Sure, Judge. And I think it's fair to say that Congress did provide the District Courts with tremendous discretion under Section 404 of the First Amendment. What makes this case an abuse of discretion? Swing. Judge, this Court in swing made very clear that the facts and circumstances presented to you here are actually more compelling than the facts and circumstances in swing. And the government never mentioned the swing decision in their responsive brief. And that's signaling to the Court that they can find no distinction between swing and this case. That's telling the Court that, first of all, in good faith, they can't present any kind of argument against swing. But also, that swing controls, that swing is controlling authority. And that's true from the Reid decision from this Court, from the Troy decision in this Court, which affirmed the validity and the applicability of swing. And there's nothing about this case that this Court can distinguish from the swing case. Thank you, Mr. Wagner. We'll hear from the governor. Good morning, Your Honors, and may it please the Court. Daniel Honnold for the United States. I want to start before I get into the main part of my argument with just two brief points about what I just heard at oral argument here from my friend. And the first is regarding the District Court's purported failure to recognize the reforms inherent in the Fair Sentencing Act and First Step Act. I direct the Court's attention to JA 865, in which the Court says, when a defendant is eligible for relief under the First Step Act, District Courts must make a, quote, holistic re-sentencing determination as to whether the original sentence remains appropriate in light of the Fair Sentencing Act's reforms, end quote, quoting to Collington. So it's quite clear that the District Court did explicitly consider the Fair Sentencing Act and First Step Act's reforms in making the decision that it made, and it found that, nevertheless, in light of the 3553A factors, that sentence reduction in its discretion was not appropriate here. And then to get to the point about swing, which is what we ended with, it's true that the government does not explicitly cite swing in its responsive brief, but there's not necessarily a legal requirement to cite a specific case in talking about an area of law. The red... I'm happy, but I mean, when the Court emphasizes the case and its calendaring and, you know, it's there in plain sight, I frankly was a little bit surprised that the government just kind of glossed right over it. Yes, Your Honor. And I hear what you're saying. I would respectfully disagree that we glossed over it, and for a couple of reasons. The parts of Reed that we cite, which came out two days before our responsive brief was due, and that's part of the reason why there's such a heavy focus on Reed, it was the cutting-edge decision on this case, area of case law at the time. The parts of Reed that we cite, I believe it's on pages 16 and 25 of our brief, are parts of Reed that themselves cite to or quote from Swain. So we're not entirely ignoring Swain. Swain does have applicability in the sense that since Concepcion, this Court has doubled and tripled down on the form of analysis that this Court undertakes, the procedural reasonableness and substantive reasonableness analysis in looking at a district court's adjudication of First Step Act motions, and that was reaffirmed in Swain. It appears to have survived Concepcion, at least in this Court's consideration of the landscape, the legal landscape of First Step Act review. And so I just don't think it's correct to say that we've waived an issue or have glossed over an issue by not explicitly citing to Swain. And so I just wanted to make sure to get those two points out before getting into this. So yes, Your Honor. On that topic, there's been a statement that you can't distinguish the facts of this case from Swain, right? And in that opinion, the court said the district court mainly considered facts that were already available at the previous sentencing. Is that different from this case? Can you distinguish this case from Swain, or is it pretty much the same and we just have to evaluate it by that standard? Your Honor, Swain is distinguishable on its facts. And before I go further into that, may I just point out that when we're talking about Swain and its use in the opening brief, there is absolutely no discussion of the facts of Swain as opposed to the legal standards set out in Swain in the opening brief. So to say that we've waived an argument that Swain on its facts does not control this case, I think is also inaccurate. But it is, of course, distinguishable on its facts. The most salient difference between that case and this case is the disciplinary history and the differences between those two. So the Swain court recognized that the defendant there had very few disciplinary infractions, and so the court, I think, naturally emphasized the information that was available to it at the time of sentencing. And so going back to the district court's order in Swain, it notes that the defendant was sanctioned for possessing unauthorized items, failing to follow safety regulations in 2009, using marijuana and suboxone in 2016, and extorting, slash, blackmail, slash, protecting in 2019. That's four different infractions over the course of a couple of years. And so it seems that the district court did not put a ton of weight in Swain on those disciplinary infractions. And here we've got a much different inmate and much different set of behavior between the original sentencing and the district court's adjudication of the First Step Act motion. And here we've got 14 disciplinary infractions over 11 different incidents in a roughly slightly over three-year period. Many of them contain violence. One of them contains the possession of a homemade weapon, the use of intoxicants, violent and threatening and sexual language towards DOP staff members and nurses, completely unacceptable behavior, and things that a district court can rightly take into account in deciding whether or not a discretionary sentence reduction is appropriate in a given case. And that's exactly what the district court did here. What about the argument, and maybe the paragraph you recited earlier about what the district court said about the First Step Act covers this, but Mr. Wagner says that the district court didn't expressly acknowledge that this was effectively an upward variant sentence. Do you agree with that premise to begin with? And second, if you do, where did the district court expressly acknowledge that? So I think it comes from there, and it comes from the district court's correctly calculating the new guidelines range in light of the changes to the guidelines brought by the First Step Act. And so it's, by the way, the court did correctly calculate those after concepcion, not taking into account any intervening non-FSA-related changes. And so when you put those together, and put those together with the courts recognizing that maintaining the sentence and not reducing it is appropriate, it's quite clear that the court recognized the delta between the top of the new guidelines range and the sentence that it was retaining, and nevertheless found that that was appropriate, and nevertheless found that that was appropriate in light of the reform aspect of the First Step Act. And so, Your Honor, I want to get to another point that was raised at argument here about the murder allegations of the informant, Ms. Beard. My friend correctly points, I think, to the proper part of the opinion that is the focus of what should be this court's analysis here, the circumstances raised at sentencing that add to the seriousness of the offense conduct. And I think the best reading of that, as we laid out in our brief, is that the court was not referring to, much less relying on, our allegations, our previous allegations that the defendant was responsible for the murder of this informant. It repeatedly recognizes throughout the lifetime of this case, at the sentencing hearing, in its memorandum opinion elsewhere, that it cannot punish or impose a sanction on the defendant for alleged conduct that's not been proved to be preponderance. And so, against that backdrop, and against the quite significant differences between the way this case looks in the proper of facts, and the way this case looks in the PSR, and the use of firearms, and the gang membership, and the attributed drug weight that's involved there, when you put all those together, it's quite clear that what the district court was referring to were the aggravated circumstances of this offense, the guns, the drugs, the gang membership, and not the murder of Ms. Beard. And so, I don't think this court has any occasion to really reach into that issue. I think the best reading of this record is that the court did not rely on that. I'm not seeing any questions from the court. I'm prepared to address a few issues that the government has with the reply brief that was taken in this case, and I can just briefly go through a few of them. We have a dispute about the meaning of the Smalls case. My friend... What did you say? I'm sorry. You had a dispute. We have a dispute about the meaning of the Smalls case and issue presentation. Okay. Questions raised in that. The Smalls case does refer to issues not being allowed to be raised in a reply brief, but it's quite clear when you read the opinion that what the court is referring to is new arguments that cannot be raised in a reply in support of a motion for relief in the district court. So, it's just not correct to say that that issue presentation requirement is limited to briefs on appeal. It's both briefs on appeal and briefs in the district court. And the scheduling order here did not relieve the defendant of his responsibility to make relevant arguments in support of his motion, in his opening motion, and not wait until the reply to raise them, which is what happened here. And I recognize that the court has signaled the relevance of Swain in its scheduling order, but to the extent the reply brief is arguing that the government was required to discuss a certain issue or is limited to only discussing a certain set of issues by virtue of the appointment order, docket number 10 on this court's docket, it's just not correct. That was a letter that was addressed to defense counsel and it's not an order of this court that binds the government. Your Honors, I could keep going on, but I'm sensing a lack of questions from this court and so unless there's anything further, I'm prepared to ask that this court affirm. Thank you very much. Thank you. Mr. Wagner, you've got some rebuttal time? Thank you, Judge. So the first issue I would like to address from the government's argument is the disciplinary history of Mr. Smith. And to what extent the court could credibly say that that was such a factor that it would justify a very significant upward variance sentence. At the time of the district court's decision, that was 2021, Mr. Smith's last infraction in the Bureau of Prisons, in his institutional setting, was back in 2013. That was eight years of a clear institutional record and now it's close to ten years. There's a letter that was submitted to the district court from a Department of Justice, Bureau of Prisons employee, talking about the good things that Mr. Smith had done recently. There were records submitted showing programming, his work history, there were letters from the support that Mr. Smith would have upon his release in the Richmond community. All of those add up to a balancing that weighs more in favor of the good things that Mr. Smith brings to the rehabilitation analysis rather than the bad things from so many years ago. So I would ask that the court not recognize that as a sufficient reason to impose a sentence of at least 78 months above the calculated guidelines for the Section 404 motion. Swain was a game changer. The Fourth Circuit through Swain joined the Sixth Circuit and the Johnson case in finding that a Section 404 case can be overturned on substantive unreasonableness grounds. That's what this court did. That was a big step. In subsequent cases, in Reed and in Troy, this court sided authoritatively to Swain, did nothing to withdraw from that game-changing decision that Swain made. There's nothing in this case that should cause this court to step back from the decision it made in Swain, from the precedent this court set in Swain, to give people like Mr. Smith the opportunity to go back to his community and his family. I don't understand anyone to be asking us to change that. We're a panel of three judges. We can't say substantive unreasonableness doesn't apply, right? We're not being asked to step back from that precedent at all. We're being asked to apply the standard of substantive reasonableness through the lens of conception and what a district court has to say or doesn't have to say, that very deferential standard to the particular facts of this case.  Absolutely. Absolutely, Judge. With that in mind, you have the government in their presentation of their argument to the court not even referencing Swain. I think that's so important here, Judge, Your Honors. That is signaling again to the court that this case cannot be distinguished from Swain. I don't think the government said much here today to draw that distinction. In Swain, you had a far greater quantity of drugs over a four-year period, a far longer period of time of drug distribution. You had a firearm in furtherance of drug trafficking, something that you don't have in this case. Yet the court found, this court found, that under those facts and circumstances, the application of substantive unreasonableness was appropriate. If it was appropriate in Swain, it must be appropriate in this court. We ask that this court reverse the decision of the district court, remand the case to the district court on a finding that that 240-month sentence was substantively unreasonable. Thank you. Thank you, Mr. Wagner. I note that you are court-appointed, and on behalf of the court, I want to thank you for your able representation of Mr. Smith. He was, his rights and interests were well-protected here this morning, and we can't, couldn't do the job that we do without lawyers like yourselves, like yourself, willing to take on these cases. So, on behalf of the court, my thanks to you for doing that. And Mr. Honnold, the same, I want to thank you for ably representing the government's interests. So, thank you both for your arguments. I'm going to come down and bring counsel and then move on to our next case.
judges: Albert Diaz, Allison J. Rushing, Henry F. Floyd